UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JESUS FUENTES,

                                    Plaintiff,

              -against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, et al.,

                                    Defendants.

---

**OPINION & ORDER**

23-CV-09464 (PMH)

PHILIP M. HALPERN, United States District Judge:

Jesus Fuentes ("Plaintiff") brings this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, predicated upon violations of his Constitutional rights. He asserts that the following defendants violated his rights: Retired New York State Department of Correction and Community Supervision ("DOCCS") Commissioner Glenn S. Goord, Retired DOCCS Commissioner Brian Fischer, Retired Fishkill Correctional Facility Superintendent Leroy Fields, Fishkill Correctional Facility Superintendent Edward Burnett, Former Corrections Officer Kimberly Lawrence, and Retired DOCCS Commissioner Anthony J. Annucci (collectively, "Named Defendants").[1] (Doc. 1, "Compl."). Liberally construed, Plaintiff's Complaint names the three former DOCCS Commissioners and Defendant Burnett in their official and individual capacities. (*See generally id.*; Doc. 7 at 2-3).

The Court, on November 29, 2023, substituted as a defendant acting DOCCS Commissioner Daniel F. Martuscello III (together with the Named Defendants, "Defendants") for

---

[1]Plaintiff also named DOCCS as a defendant in the complaint. On November 29, 2023, the Court, *sua sponte*, dismissed DOCCS as a defendant under 28 U.S.C. § 1915(e)(2)(B)(iii), as well as the official-capacity claims against former Commissioners Goord, Fischer, and Annucci, because the Eleventh Amendment barred Plaintiff's claims against them. (Doc. 7 at 2-3).

former Commissioner Annucci for Plaintiff's official-capacity claims for prospective injunctive relief. (*Id.* at 5); *see* Fed. R. Civ. P. 25(d). The Court explained: "Because Acting Commissioner Martuscello may be in a position to provide prospective injunctive relief, Plaintiff's official-capacity claim for prospective injunctive relief can proceed at this stage against Acting Commissioner Martuscello under the *Ex parte Young* doctrine." (Doc. 7 at 3). Former Commissioner Annucci remains as a defendant in his individual capacity for Plaintiff's claims for monetary relief. (Doc. 14).

Defendants filed a motion to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on September 3, 2024. (Doc. 45; Doc. 46, "Def. Br.").[2] Plaintiff filed his memorandum of law in opposition on November 26, 2024. (Doc. 54, "Pl. Br."),[3] and Defendants filed their reply on December 13, 2024 (Doc. 55).

For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff has been incarcerated in DOCCS facilities since 1998. (Compl. at 7).[4] During this period, Plaintiff has spent time in seven different facilities. (*Id.* at 7, 9, 15, 19, 21, 29). Plaintiff

---

[2] Although Defendants' Notice of Motion omits Commissioner Martuscello as a moving Defendant, Defendants' memorandum of law mentions him. (*See, e.g.*, Def. Br. at 7 ("Defendants Goord, Fischer, Annucci, Burnett, Fields, Lawrence, and Martuscello . . . respectfully submits this memorandum of law in support of their Motion to Dismiss the Complaint[.]")). The Court therefore construes Defendants' motion as being made on behalf of all defendants in this action.

[3] Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition to a motion to dismiss where they are consistent with the allegations contained in the pleading. *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a pro se plaintiff's opposition memoranda 'are consistent with the allegations contained' in the Complaint, they may be read 'as supplements to th[e] pleadings[.]'" (quoting *Boyer v. Channel 13, Inc.*, No. 04-CV-02137, 2005 WL 2249782, at *6 (S.D.N.Y. Mar. 9, 2005))). Accordingly, the Court considers on this motion the additional allegations in Plaintiff's opposition that are relevant to this motion.

[4] Citations to specific pages of filings on the docket correspond to the pagination generated by ECF.

alleges that he has been subject to unreasonably high exposure to environmental tobacco smoke ("ETS")[5] at each one of these facilities. (*Id.* at 8-10, 15-16, 20, 23, 38). Plaintiff suffered high-level exposure to ETS despite DOCCS adopting an official policy in 2006 banning indoor smoking in facilities. (*Id.* at 46).

Plaintiff submitted a grievance, dated April 2, 2017, about DOCCS's purported "unwritten official policy" permitting and encouraging inmates to smoke indoors ("April 2017 Grievance"). (Doc. 1-1 at 7-16). After initially returning the April 2017 Grievance to Plaintiff as "untimely," DOCCS personnel resubmitted the grievance for Plaintiff on May 3, 2017. (*Id.* at 19). On May 19, 2017, the Inmate Grievance Resolution Committee referred the April 2017 Grievance "to the Superintendent for further action and response." (*Id.* at 20). On May 23, 2017, the Superintendent denied Plaintiff's grievance, finding "no merit in [Plaintiff's] allegations." (*Id.* at 21). Two days later, Plaintiff appealed the Superintendent's decision to the Central Office Review Committee ("CORC"). (*Id.*). "Plaintiff has yet to receive [an] appeal determination from CORC." (Compl. at 83).

On March 31, 2021, the Humane Alternatives to Long-Term Solitary Confinement Act ("HALT Act") was signed into law by then-Governor Andrew Cuomo. (*Id.* at 54). Plaintiff alleges that the HALT Act exacerbated the problem of inmate smoking in DOCCS facilities by "downgrad[ing]" punishment for smoking-related offenses. (*Id.* at 118-128).

---

[5] ETS generally means "smoke emitted by the burning end of a lighted cigarette, known as sidestream smoke, and the smoke exhaled by the smoker, known as mainstream smoke." *NYC C.L.A.S.H., Inc. v. City of New York*, 315 F. Supp. 2d 461, 466 n.2 (S.D.N.Y. 2004) (citing The Health Consequences of Smoking, A Report of The Surgeon General, United States Department of Health and Human Services (1986) at 7); *see also Beatie v. New York City*, No. 95-CV-03429, 1996 WL 442869, at *2 (S.D.N.Y. Aug. 6, 1996) (quoting New York City's Administrative Code, which defined ETS as "smoke to which people are involuntarily exposed either through a smoker exhaling smoke from a tobacco product, or through the lighting or burning of any tobacco product").

Plaintiff, in this action, seeks monetary as well as declaratory and injunctive relief. (*Id.* at 128-132).

## STANDARD OF REVIEW

### I.    Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action when the district court lacks the statutory or constitutional power to adjudicate it." *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019).[6] "Where, as here, the defendant moves for dismissal under Rule 12(b)(1)[], as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)). A plaintiff's pleading must only allege, to survive a motion to dismiss, facts that "affirmatively and plausibly suggest" his standing to sue. *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 255 (S.D.N.Y. 2018) (citing *Boelter v. Hearst Commc'n, Inc.*, 192 F. Supp. 3d 427, 437 (S.D.N.Y. 2016)).

### II.    Rule 12(b)(6) Standard

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

---

[6] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

*Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to

5

meet minimum pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

Liberally construed, Plaintiff presses two claims for relief: (i) a constitutional challenge to the HALT Act, seeking a declaration that it violates his Eighth and Fourteenth Amendment rights (Compl. at 118-128, 132); and (ii) that Defendants deprived him of his Eighth Amendment right to be free from cruel and unusual punishment through deliberate indifference in creating and maintaining a "policy" of encouraging inmate smoking and inadequate enforcement of DOCCS's indoor smoking ban, exposing Plaintiff to unreasonably high amounts of ETS (*id.* at 85-117). Defendants seek the complete dismissal of Plaintiff's action on numerous grounds.

### I.    Eleventh Amendment Immunity

As an initial matter, Defendants argue that Plaintiff's official-capacity claims against Defendant Burnett must be dismissed under the Eleventh Amendment because Plaintiff does not seek any prospective injunctive relief against him. (Def. Br. at 26-27). Plaintiff does not contest this argument. (Pl. Br. at 17). Insofar as Plaintiff intends to press claims against Defendant Burnett

in his official capacity under 42 U.S.C. § 1983, those claims must be dismissed by operation of the Eleventh Amendment.

The Eleventh Amendment directs that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This language bars suits, even those arising under federal law, against a state, or against a state employee acting in his or her official capacity, by one of its own citizens. *Woods v. Rondout Valley Centr. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself.").

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Nelkenbaum v. Jordy*, No. 19-CV-07953, 2020 WL 7630354, at *2 (S.D.N.Y. Dec. 22, 2020) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original)). To that point, it is well-settled that "New York has not waived its sovereign immunity in § 1983 lawsuits, nor has Congress abrogated the State's immunity." *Phillips v. New York*, No. 13-CV-00927, 2013 WL 5703629, at *3 (N.D.N.Y. Oct. 17, 2013) (citing *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013)); *see also Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011) ("Magistrate Judge Freeman properly concluded that Keitt's Section 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the [Eleventh] Amendment.").

Because the Eleventh Amendment deprives this Court of subject-matter jurisdiction and neither exception applies, the claims for relief under 42 U.S.C. § 1983 are dismissed under Rule 12(b)(1) to the extent they seek relief against Defendant Burnett in his official capacity. This result does not affect the 42 U.S.C. § 1983 claims against Defendant Burnett in his individual capacity.

II.    HALT Act Claim for Relief

Next, Defendants argue that Plaintiff lacks Article III standing to maintain his HALT Act claim for relief. (Def. Br. at 12-14). The Court agrees.

The Supreme Court has held that parties pressing claims in federal courts must have standing to bring their claims to ensure that there is an actual case or controversy under Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff has standing if she has suffered "(1) an injury that is (2) 'fairly traceable to a defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'" *Id.* at 560-61 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). "The traceability requirement for Article III standing means that the plaintiff must 'demonstrate a causal nexus between the defendant's conduct and the injury.'" *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (quoting *Heldman v. Sobol*, 962 F.2d 148, 156 (2d Cir.1992)).

Plaintiff's HALT Act claim turns on his allegations that the law loosened the penalties faced by inmates caught smoking. (Compl. at 119, 121). Given this more lenient policy, Plaintiff asserts that inmates are now free to smoke "with impunity," "endangering Plaintiff's present and future health." (*Id.* at 128). So far as the argument goes, Defendants' argument concerning the impact of solitary confinement reform on the overall level of emitted tobacco smoke in New York correctional facilities is compelling. *See New York State Corr. Officers & Police Benevolent Ass'n, Inc. v. Hochul*, 607 F. Supp. 3d 231, 241 (N.D.N.Y. 2022). The risk that an inmate will violate an indoor smoking policy and cause injury to Plaintiff's health as a result—at some point in the

future—is entirely speculative. Injury in-fact is therefore speculative as well. Additionally, these conclusory allegations fail to adequately plead the traceability requirement for Article III standing.[7] In particular, Plaintiff's alleged injury is entirely dependent on, and arises from, the acts of third parties: other inmates. Plaintiff, in this way, "never connect[s] the dots between [Defendants] and [his] alleged injuries necessary to show causation." *Heidel v. Governor of New York State*, No. 21-2860-CV, 2023 WL 1115926, at *2 (2d Cir. Jan. 31, 2023) (affirming dismissal for lack of standing); *see also Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*, 88 F.4th 344, 352 (2d Cir. 2023) ("Standing requires more than mere speculation about the decisions of third parties and must rely instead on the predictable effect of Government action on the decisions of third parties."); *Ajaj v. MacKechnie*, No. 07-CV-05959, 2008 WL 3166659, at *5 (S.D.N.Y. Aug. 4, 2008) ("Here, the injury-in-fact that plaintiff has suffered . . . is not causally connected to the conduct of which he complains; none of it may be fairly traced to the actions of the defendants as distinguished from that of third parties not before the court[.]"). Here, too, Plaintiff's allegations are entirely speculative as unknown inmates who may violate a smoking policy may or may not cause injury to this Plaintiff.

Accordingly, Plaintiff's HALT Act claim is dismissed.

III.     Deliberate Indifference Claim for Relief

Defendants argue that dismissal of Plaintiff's deliberate indifference claim is warranted because: (i) Plaintiff did not exhaust his administrative remedies for all the Defendants; (ii)

---

[7] Although Defendants focus exclusively on the injury in-fact element (Def. Br. at 13-14), the Court has an independent duty to ensure that Plaintiff has established each Article III element to confer subject matter jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists."). Therefore, the Court considers the traceability-causation requirement for standing as well. *See Rivera v. United States*, No. 23-7522, 2024 WL 4645814, at *1 (2d Cir. Nov. 1, 2024) ("Because Article III standing goes to a federal court's subject-matter jurisdiction, it can be raised *sua sponte*.").

Plaintiff's claim is time-barred; (iii) Plaintiff fails to adequately allege personal involvement by Defendants; and (iv) Plaintiff fails to adequately allege the elements of a deliberate indifference claim. (Def. Br. at 14-26). Given the meaningful variations among the factual allegations against each Defendant spanning the 139-page Complaint, the Court organizes its analysis below by individual Defendant or Defendant group.

### A. Defendant Lawrence

Defendants argue that Plaintiff's federal claims against Defendant Lawrence, a former Corrections Officer at Fishkill Correctional Facility, must be dismissed for failure to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). (Def. Br. at 25-26).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), and it is "'mandatory': [a]n inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016) (citation omitted). "Moreover, the PLRA 'requires proper exhaustion, which means using all steps that the prison grievance system holds out.'" *Ayala-Rosario v. Westchester Cnty.*, No. 19-CV-03052, 2020 WL 3618190, at *4 (S.D.N.Y. July 2, 2020) (quoting *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)). This "means that 'prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6, 2020) (quoting *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir.

2012)). Compliance with the PLRA "is an affirmative defense, not a pleading requirement, and therefore a motion to dismiss for failure to exhaust may only be granted if it is clear from the face of the complaint that the plaintiff failed to exhaust" his administrative remedies. *See Gunn v. Beschler*, No. 16-CV-06206, 2020 WL 7398751, at *4 (W.D.N.Y. Dec. 17, 2020).

Generally, an inmate in DOCCS custody is required to follow a three-step process to exhaust the grievance process completely. *See Amador v. Andrews*, 655 F.3d 89, 96-97 (2d Cir. 2011) (outlining DOCCS's three-step grievance process). First, a grievance must be submitted to the Inmate Grievance Resolution Committee ("IGRC"), a facility-level body consisting of inmates and facility staff members. N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.4, 701.5(a)-(b). Second, should the inmate be dissatisfied with the conclusion reached by the IGRC, he may appeal that decision to the superintendent of the facility within seven calendar days of receiving the IGRC's determination. *Id.* § 701.5(c)(1). Finally, if the superintendent's conclusions are unfavorable, the inmate may appeal that decision to CORC within seven calendar days of receiving the superintendent's determination. *Id.* § 701.5(d)(1)(i). CORC then has 30-days by which to provide a response to the appeal. *Id.* § 701.5(d)(3)(ii).

Moreover, for this process, the Second Circuit has held that an inmate is "not required to specifically identify the responsible parties in his grievance in order to later name them as defendants in this lawsuit." *Espinal v. Goord*, 558 F.3d 119, 127 (2d Cir. 2009). Even so, to adequately exhaust one's administrative remedies, an inmate must still provide the "necessary information" in his grievance to put prison officials on notice to "investigate the complaints" and be given "the opportunity to learn which officers were involved in the alleged incident." *Id.* at 127; *see also Messa v. Woods*, No. 07-CV-00306, 2009 WL 3076120, at *7 (N.D.N.Y. Sept. 23, 2009)

11

("A grievance . . . must place defendants on notice of what, substantively, is claimed in order to permit a proper investigation.").

Here, Defendants argue that Plaintiff never put prison officials on notice that he made any allegations concerning Defendant Lawerence. (Def. Br. at 26). Plaintiff concedes that he never named Defendant Lawrence in the April 2017 Grievance or subsequent appeal. (Pl. Br. at 26). He instead argues that he provided "enough information about the alleged conduct" in the April 2017 Grievance to allow DOCCS to identify her. (*Id.*). Even affording Plaintiff the appropriate lenity as a *pro se* litigant, the Court disagrees.

The crux of Plaintiff's April 2017 Grievance was that DOCCS policymakers had instituted "an unwritten official policy" of permitting and encouraging inmates to smoke. (Doc. 1-1 at 9 (cleaned up)).[8] More specifically, the April 2017 Grievance focused exclusively on DOCCS's smoking "policy." (*Id.* at 7-16). Indeed, in denying the grievance, the Fishkill Correctional Facility's Superintendent characterized Plaintiff's allegations as "suggest[ing] that [DOCCS] and specifically Acting Commissioner Annucci has maintained an unwritten policy concerning inmate smoking[.]" (*Id.* at 21). Nothing in the grievance, even affording Plaintiff the benefit of all reasonable inferences, could have plausibly put prison authorities on notice that Plaintiff was making any allegations with respect to non-policy-making individuals, such as Defendant Lawrence. Moreover, even if the April 2017 Grievance could be construed as making allegations

---

[8] Because the April 2017 Grievance and subsequent administrative appeal are referenced in and attached to the Complaint (Doc. 1-1; Compl. at 81-82), the Court may consider these documents. *See Thomas v. Goord*, 215 F. App'x 51, 54 n.2 (2d Cir. 2007) (observing that because the plaintiff "specifically references the . . . grievance . . . and indicates that she is making allegations that are contained within that grievance," the grievance could be considered on a motion to dismiss because its contents were "incorporated by reference"); *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *6 (S.D.N.Y. Sept. 8, 2020) ("Plaintiff has incorporated by reference and has attached to her complaint documents related to her grievance against the Defendant. . . . Having done so, Plaintiff has placed the exhaustion issue squarely before the Court.").

about corrections officers, nothing in it plausibly suggests that Plaintiff was making allegations about Defendant Lawrence—who Plaintiff first encountered *after* filing his grievance. (*Compare id.* at 7 (inmate grievance dated April 2, 2017), *with* Compl. at 38 ("About the third week of April, 2017, defendant Kimberly Lawrence had assumed the then-vacant, tour-two B-Center, as the officer-in-charge." (cleaned up)), *and id.* at 100 ("Plaintiff alleges that Lawrence, during her assignment—from April, 2017 through December, 2021. . . .")).

Accordingly, the affirmative defense of failing to comply with the PLRA is clear from the face of the pleadings, and Plaintiff's claims are dismissed as to Defendant Lawrence. *See Upson v. Wilson*, No. 18-CV-01149, 2020 WL 6530782, at *6 (N.D.N.Y. July 23, 2020) (dismissing a deliberate indifference claim on a Rule 12(b)(6) motion against two corrections-officers under the PLRA where "nothing in the grievance could have reasonably led prison authorities to conclude that Plaintiff was making any allegations with respect to [the] C.O[s]"), *adopted by*, 2020 WL 5544200 (N.D.N.Y. Sept. 16, 2020); *Montanez v. Lee*, No. 14-CV-03205, 2016 WL 3866594, at *9 (S.D.N.Y. July 12, 2016) (similar); *Hawthorne v. Nurse Sturgeon*, No. 17-CV-00438, 2018 WL 4290458, at *6 (N.D.N.Y. Aug. 8, 2018) (similar but for a correctional facility nurse), *adopted sub nom. by*, *Hawthorne v. Sturgeon*, No. 17-CV-00438, 2018 WL 4288624 (N.D.N.Y. Sept. 7, 2018).[9]

   B. Defendants Fields, Goord, and Fischer

Plaintiff alleges that Defendant Fields acted with deliberate indifference from March 2017 until August 2020 (Compl. at 91); that Defendant Goord acted with deliberate indifference from August 1998 until August 2006 (*id.* at 104); and that Defendant Fischer acted with deliberate

_____

[9] Given the Court's ruling herein, the Court need not and does not address Defendants' other arguments concerning Defendant Lawrence.

indifference from January 2007 until May 2013 (*id.*). Defendants argue that these claims are barred by the applicable statute of limitations. (Def. Br. at 22-25).

Although statute of limitations is ordinarily asserted as an affirmative defense, the Second Circuit permits such defense to be raised on a Rule 12(b)(6) motion provided "the defense appears on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *DiBenedetto v. Coley*, No. 22-CV-05926, 2024 WL 1216703, at*4 (S.D.N.Y. Mar. 21, 2024) (granting a motion to dismiss and dismissing claims as time-barred). The statute of limitations for claims brought pursuant to 42 U.S.C. § 1983 is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. *See* N.Y. C.P.L.R. § 214(5). Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013). "[U]nder the prison mailbox rule, the date of filing is deemed to be the date that the prisoner-plaintiff delivered his complaint to a prison guard for mailing to the court, which is presumed to be the date that the complaint was signed." *Crichlow v. DOCCS*, No. 18-CV-03222, 2022 WL 6167135, at *2 (S.D.N.Y. Oct. 7, 2022); *see also Walker v. Jastremski*, 430 F.3d 560, 561 (2d Cir. 2005) (explaining prison mailbox rule).

Plaintiff signed his Complaint on October 7, 2023. (Compl. at 138). His deliberate indifference claims therefore had to have accrued on or after October 7, 2020. Plaintiff's claims against Defendants Goord, Fischer, and Fields are thus well outside the applicable limitation period.

Nevertheless, Plaintiff argues that his deliberate indifference claim is timely against all the named defendants—including Goord, Fischer, and Fields. Plaintiff, for this argument, invokes two

14

doctrines: the "continuing violation" doctrine and equitable tolling. (*Id.* at 129-130). The Court also considers, given Plaintiff's *pro se* status, the impact of then-Governor Andrew Cuomo's March 2020 executive order tolling the time limits for filing legal actions prescribed by New York state's procedural laws in response to the COVID-19 pandemic.

### i. Continuing Violation Doctrine

The "continuing violation" doctrine is an "exception to the normal knew-or-should-have-known accrual date." *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999). It applies "to claims composed of a series of separate acts that collectively constitute one unlawful [] practice." *Smith v. City of New York*, 664 F. App'x 45, 47 (2d Cir. 2016) (quoting *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015); alteration in the original). "The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a serial violation, but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez*, 802 F.3d at 220 (cleaned up).

Plaintiff asserts that his allegations fit within this doctrine because he alleges "repeat[ing] misconduct" occurring over several years. (Pl. Br. at 32 (alteration in the original)). But his reliance on this doctrine is misplaced for two independent reasons. First, the Second Circuit has explained that the continuing-violation doctrine only applies where there has been "a series of separate acts that collectively constitute one unlawful [act]." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). In other words, there must be a "cumulative," rather than merely a continuing, injury. *Id.* at 182. Yet Plaintiff does not allege a cumulative injury. To the contrary, Plaintiff alleges that he was exposed to unreasonably high levels of ETS in each one of the facilities in which he has been confined since 1998. (Compl. at 8-10, 15-16, 20, 23, 38). As such, Plaintiff's deliberate-indifference claim was ripe at the time of "expos[ure] [] to levels of ETS that pose[d] an unreasonable risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 35

(1993); *cf. Smith*, 664 F. App'x at 47 (declining to apply the continuing violation doctrine where the plaintiff's claim was ripe before the limitation period).

Second, Plaintiff, based on the four corners of the Complaint, was aware of the alleged injury—exposure to unreasonably high levels of ETS—well before the limitation period. *See Dynamics Inc. v. Samsung Elecs. Co.*, No. 19-CV-06479, 2024 WL 1484054, at *3 (S.D.N.Y. Apr. 5, 2024) ("[T]he continuing violation doctrine does not apply when the plaintiff is aware of the injury at the time it occurred." (citation omitted; alteration in the original)). For instance, Plaintiff alleges that at some point between 2001 and 2007, he began conducting legal research about "the possibility of commencing some type of judicial action, respecting being exposed to ETS." (Compl. at 13). Plaintiff argues that he could not act on his injury because he needed time to (i) discover controlling Supreme Court precedent, (ii) conduct an investigation to gather sufficient evidence to meet his burden of proof in an eventual lawsuit, and (iii) research "unpublished ETS-related cases." (*Id.* at 133-137). None of these reasons are grounds to invoke the continuing violation doctrine. *See Newkirk v. Douglas Elliman, Inc.*, No. 23-CV-07040, 2024 WL 5089160, at *7 (S.D.N.Y. Dec. 12, 2024) (declining to apply continuing violation doctrine where the plaintiff was aware of the injury but argued that "she did not appreciate that th[e alleged] conduct was actionable"). Accordingly, the Court finds the continuing violation doctrine inapplicable here.

ii.  Equitable Tolling

Plaintiff also invokes the doctrine of equitable tolling. Specifically, Plaintiff argues that the April 2017 Grievance tolled the applicable statute of limitations, and thus Plaintiff's claims that accrued on or before then are timely. (Pl. Br. at 27).

The Second Circuit has held "that the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process [under the PLRA]." *Gonzalez v. Hasty*, 651 F.3d 318, 323-24 (2d Cir. 2011). "The equitable tolling period begins when a plaintiff first

raises his administrative claim and ends when the plaintiff's administrative remedies are deemed exhausted." *Gutek v. Borchardt*, No. 17-CV-00471, 2020 WL 2336187, at *6 (N.D.N.Y. May 11, 2020) (citing *Gonzalez*, 651 F.3d at 324). Put differently, the applicable statute-of-limitations period is only "tolled during the time that an inmate is actively exhausting administrative claims." *Briglin v. Hurley*, No. 23-CV-01001, 2024 WL 3828234, at *10 (N.D.N.Y. Aug. 15, 2024) (cleaned up). An "inmate exhausts administrative remedies when he follows the procedure in its entirety but the CORC fails to respond within the 30 days it is allocated under the regulations." *Hayes v. Dahlke*, 976 F.3d 259, 270 (2d Cir. 2020).

As an initial matter, this doctrine has no bearing on Plaintiff's claims against Defendants Goord or Fischer. The latest accrual date is August 2006 for Defendant Goord, and May 2013 for Defendant Fischer. (Compl. at 104). Both dates are more than three years before Plaintiff commenced the administrative grievance process in April 2017. (*Id.* at 81; Doc. 1-1 at 7); *see Katergaris v. City of New York*, No. 24-1889-CV, 2025 WL 1129197, at *1 (2d Cir. Apr. 15, 2025) ("The statute of limitations for [the plaintiff's] section 1983 claim, determined by New York law, is three years.").

Although Plaintiff alleges that Defendant Fields acted with deliberate indifference starting in March 2017 (Compl. at 91), equitable tolling also does not save Plaintiff's claim against him for conduct that accrued before or on April 2, 2017, the date on which he filed his administrative grievance. Under the controlling rules described *supra*, the statute-of-limitation period was tolled for close to three months: Plaintiff filed his administrative claim on April 2, 2017, he filed his appeal to the CORC on May 25, 2017, and CORC did not respond to Plaintiff's appeal by June 26, 2017, *i.e.*, within 30-days. (*Id.* at 81-82; Doc. 1-1 at 7-16, 21). Thus, even applying equitable

tolling to Plaintiff's deliberate indifference claim against Defendant Fields for conduct that accrued on or before April 2, 2017, Plaintiff's claim is still out of time.

Therefore, under the tolling rule established by *Gonzalez*, 651 F.3d at 324, and the rule of inmate exhaustion of administrative remedies articulated in *Hayes*, 976 F.3d at 270,[10] equitable tolling does not bring Plaintiff's claims against Defendants Fields, Goord, or Fischer within the applicable statute of limitations.

Even so, liberally construed, Plaintiff makes one last argument for equitable tolling in his opposition: *Hayes* is inapplicable to this action. (Pl. Br. at 28). That case was decided after he filed the April 2017 Grievance. (*Id.*). So, Plaintiff continues, the Court cannot apply *Hayes* retroactively; the Court instead must apply pre-*Hayes* case law—some of which held that an inmate must wait until receiving a final decision to fully exhaust his administrative remedies. (*Id.* (collecting cases)). Plaintiff's argument, if accepted, would bring Plaintiff's deliberate indifference claim against Defendant Fields within the relevant limitation period for conduct that accrued on or even before April 2, 2017.

But Plaintiff is mistaken. He "misconstrues the law of retroactivity and is explicitly foreclosed by [controlling] case law." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 215 (2d Cir. 2010). The Supreme Court has long held "that judicial decisions are presumptively retroactive in their effect and operation." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993); *see also Kinkead v. Humana, Inc.*, 206 F. Supp. 3d 751, 754 (D. Conn. 2016) ("The ruling of the Supreme Court or of a federal court of appeals within its geographical jurisdiction 'is

---

[10] Plaintiff is incorrect that Defendants are judicially estopped from invoking *Hayes*'s rule of inmate exhaustion. (Pl. Br. at 28-29). It is well-established that judicial estoppel is inappropriate where a party's change in position between proceedings relates to an intervening and controlling judicial decision. *See Seneca Nation of Indians v. State of N.Y.*, 26 F. Supp. 2d 555, 565 (W.D.N.Y. 1998) (holding that judicial estoppel was inapplicable where there was a "change in the legal standard . . . announced by the Supreme Court"); 18B Wright & Miller, *Federal Practice & Procedure* § 4477.3 (3d ed.).

the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.'" (quoting *Harper*, 509 U.S. at 97)); *Garcia v. Garland*, 64 F.4th 62, 70 & n.6 (2d Cir. 2023) (recognizing the presumption of retroactivity of judicial opinions). In fact, the Supreme Court has recognized only "two classes of cases in which 'special federal policy concerns' may justify suspending the ordinary presumption in favor of retroactivity": qualified immunity and habeas corpus. *Sinoying*, 619 F.3d at 215. Plaintiff's equitable interests concerning tolling the statute of limitations fall into neither of those recognized exceptions. The Court therefore will—and must—apply *Hayes*'s rule of inmate exhaustion of administrative remedies.

### iii. COVID-19 Tolling

"In addition to borrowing the applicable state statute of limitations in § 1983 actions, federal courts borrow the applicable state tolling provisions as well." *Koger v. New York*, No. 13-CV-07969, 2014 WL 3767008, at *5 (S.D.N.Y. July 31, 2014). On March 20, 2020, former Governor Andrew Cuomo issued Executive Order 202.8, 9 N.Y.C.R.R. § 8.202.8, in response to the COVID-19 pandemic. The executive order and its later extensions ("COVID-19 Executive Orders") "toll[ed] the time limits for filing legal actions as prescribed by the state's procedural laws." *Bonilla v. City of New York*, No. 20-CV-00170, 2020 WL 6637214, at *1 (E.D.N.Y. Nov. 12, 2020). "The New York Court of Appeals construes these executive orders as having 'tolled all filing periods' from March 20, 2020 to November 3, 2020." *DiBenedetto v. Coley*, No. 24-1029-CV, 2024 WL 4662979, at *2 (2d Cir. Nov. 4, 2024) (quoting *Favourite Ltd. v. Cico*, 42 N.Y.3d 250, 260 (2024)). Courts within this Circuit have applied then-Governor Cuomo's executive order to cases brought under Section 1983. *See, e.g.*, *Rich v. New York*, No. 21-CV-03835, 2022 WL 992885, at *8 (S.D.N.Y. Mar. 31, 2022) ("[O]ther courts in this district have uniformly concluded

that Executive Order 202.8 applies to federal cases applying New York's statute of limitations, including for § 1983 claims.").

Even under this extension, however, Plaintiff's claims against Defendants Goord and Fischer are untimely. The latest accrual date for either defendant is 2013. On the other hand, the additional time under the COVID-19 Executive Orders brings Plaintiff's claim against Defendant Fields within the applicable limitation period for conduct that accrued on or after March 20, 2020. Under the general three-year limitation period for Section 1983 claims, Plaintiff would have had to commence this action by March 20, 2023. But the COVID-19 Executive Orders extended that deadline to November 3, 2023, thereby making Plaintiff's Complaint on October 7, 2023 timely.

Accordingly, Plaintiff's deliberate indifference claim against Defendants Goord and Fischer is barred by the statute of limitations, and Defendants' motion is granted as to them.[11] Defendants' motion is denied as to Defendant Fields for conduct that accrued on or after March 20, 2020.

      C.  Defendants Annucci, Burnett, Fields, and Martuscello

Plaintiff alleges that Defendant Annucci acted with deliberate indifference from May 2013 until August 2023 (Compl. at 128), and that Defendant Burnett acted with deliberate indifference from September 2020 to the present (*id.* at 91-92). As noted *supra*, Plaintiff alleges that Defendant Fields acted with deliberate indifference from March 2017 until August 2020. (*Id.* at 91). While Plaintiff makes no allegations about Defendant Martuscello, his deliberate-indifference claim "against [Annucci] in his official capacity ha[s] been assumed by [Martuscello]." *Corn v. Mississippi Dep't of Pub. Safety*, 954 F.3d 268, 275 n.4 (5th Cir. 2020). Thus, if Plaintiff plausibly

---

[11] Given the Court's ruling herein, the Court need not and does not address Defendants' other arguments concerning Defendants Goord and Fischer.

alleges his deliberate indifference claim against Defendant Annucci for his conduct as DOCCS Commissioner, Plaintiff's official-capacity claim for prospective relief against Defendant Martuscello, the current DOCCS Commissioner, may proceed. *See Lewis v. Clarke*, 581 U.S. 155, 162 (2017) ("[W]hen officials sued in their official capacities leave office, their successors automatically assume their role in the litigation. . . . The real party in interest is the government entity, not the named official.").

With respect to Plaintiff's deliberate indifference claim against these defendants, the claim is, for the reasons provided *supra*, time-barred to the extent that it is based on alleged acts before March 20, 2020 (accounting for the COVID-19 Executive Orders). As for Plaintiff's timely allegations about Defendants Annucci, Fields, and Burnett, Defendants argue that Plaintiff fails to "demonstrate any personal involvement," and that Plaintiff fails to adequately allege either prong of his deliberate indifference claim. (Def. Br. at 14-18, 20-22).

### i. Personal Involvement

"To state a claim under Section 1983, a plaintiff must allege facts showing defendants' direct and personal involvement in an alleged constitutional deprivation." *Johnson v. City of Newburgh*, 690 F. Supp. 3d 224, 238 (S.D.N.Y. 2023). The Second Circuit, in *Tangreti v. Bachmann*, explained that "there is no special rule for supervisory liability." 983 F.3d 609, 618 (2d Cir. 2020). The Second Circuit continued: "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* In other words, for a deliberate indifference claim, a plaintiff must show that a supervisor defendant himself "acted with deliberate indifference—meaning that [the defendant] personally knew of and disregarded an excessive risk to [the plaintiff's] health or safety." *Id.* at 619 (cleaned up). Since *Tangreti*, however, district courts in this Circuit have coalesced around the view "that personal involvement still may be established for a supervisory defendant if he or she created a

policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom." *Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 416 (E.D.N.Y. 2023) (collecting cases).

Plaintiff, at this early juncture, has sufficiently pled Defendants Annucci, Fields, and Burnett's personal involvement. First, Plaintiff alleges these defendants—as Commissioner of DOCCS (Annucci) and Superintendent of Fishkill Correctional Facility (Fields and Burnett)— created or maintained an unconstitutional policy of permitting and encouraging indoor smoking by inmates. *See Stone #1 v. Annucci*, No. 20-CV-01326, 2021 WL 4463033, at *8 (S.D.N.Y. Sept. 28, 2021) ("Annucci as acting commissioner was at all relevant times responsible for enacting policies governing inmate safety and ensuring that such policies are enforced[.]"); *Latimer v. Annucci*, No. 21-CV-01275, 2022 WL 1137055, at *3 (S.D.N.Y. Apr. 18, 2022) ("[L]iberally construing plaintiff's submissions, plaintiff plausibly alleges Commissioner Annucci enacted [an unconstitutional] policy[.]"). Second, Plaintiff adequately alleges that these defendants knew of and disregarded a serious risk. Among other things, the Complaint identifies ETS-related incidents that Defendants Annucci, Fields, and Burnett, given their positions, were likely aware of. (*See, e.g.*, Compl. at 87 (documenting "at least two incidents involving Fishkill staff-members requiring emergency hospitalization, after being overcome by clouds of smoke--including tobacco and other illicit substance")); *cf. Stone #1*, 2021 WL 4463033, at *8 (holding that the plaintiff had adequately alleged deliberate indifference by Commissioner Annucci because, in part, of the complaint's allegations about "DOCCS reports of which Annucci . . . [was] likely aware").

ii.   Exposure to ETS

"To show that a prison official has violated the Eighth Amendment through deliberate indifference, a plaintiff must demonstrate that: (1) the conditions of confinement objectively posed a 'substantial risk of serious harm,' and (2) the defendant was subjectively aware of and

unreasonably disregarded this health or safety risk." *Eldridge v. Williams*, No. 10-CV-00423, 2013 WL 4005499, at *6 (S.D.N.Y. July 30, 2013) (citing *Helling*, 509 U.S. 25, 33–35, and *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)). "In the context of an ETS claim, the Supreme Court has held that to satisfy the objective prong, plaintiff must demonstrate exposure to 'unreasonably high levels' of ETS that would damage his future health and that the risk 'is so grave that it violated contemporary standards of decency to expose anyone unwillingly to such a risk.'" *Taylor v. Conway*, No. 06-CV-01329, 2008 WL 4371928, at *4 (D. Conn. Sept. 23, 2008) (quoting *Helling*, 509 U.S. at 35, 36)), *aff'd*, 381 F. App'x 40 (2d Cir. 2010).

Plaintiff, for the reasons provided *supra*, adequately alleges the subjective element for Defendants Annucci, Fields, and Burnett. With respect to the objective element, Defendants argue that Plaintiff failed to adequately allege that the ETS exposure was "unreasonably high." (Def. Br. at 17-18). But that argument is misplaced in this procedural posture. Plaintiff alleges, among other things, that he was exposed to "unreasonably high levels of indoor ETS" in his "assigned bed area" at Fishkill Correctional Facility from at least as early as March 20, 2020, "through to the filing of [his] complaint." (Compl. at 38). If that allegation is borne out in discovery, a reasonable jury could find that Plaintiff faced an unreasonable risk of harm to his health in violation of the Eighth Amendment. *Cf. Eldridge*, 2013 WL 4005499, at *8 ("Courts have generally found ETS exposure to be unreasonably high mainly when the plaintiff shares a cell with an inmate who is a frequent or chain smoker, or when the plaintiff is housed in a cell surrounded by such smokers."); *see also O'Diah v. Fischer*, No. 08-CV-00941, 2012 WL 987726, at *13 (N.D.N.Y. Feb. 28, 2012) (holding that a *pro se* plaintiff adequately pled the objective element for an ETS-deliberate-indifference claim where he alleged that he "was inundated with cigarette smoke and its byproducts" at a DOCCS facility), *adopted by*, 2012 WL 976033 (N.D.N.Y. Mar. 22, 2012).

23

Accordingly, at this stage, Plaintiff has sufficiently alleged his deliberate indifference claim against Defendants Annucci, Fields, and Burnett. Plaintiff's official-capacity claim against Defendant Annucci's successor in office, Defendant Martuscello, thus may also proceed.

## IV.    Leave to Amend

Rule 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to *pro se* litigants who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (quoting *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984)). However, while "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

As set forth *supra*, Plaintiff's first claim for relief concerning the HALT Act and his second claim for relief concerning deliberate indifference, to the extent alleged against Defendants Lawrence, Goord, and Fischer, are dismissed. Because standing implicates subject matter jurisdiction, the first claim for relief is dismissed without prejudice such that Plaintiff may press the claim if he has and can demonstrate that he has standing. *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1074 (2d Cir. 2021). However, Plaintiff's second claim for relief as alleged against Defendants Lawrence, Goord, and Fischer is dismissed with prejudice and granting Plaintiff leave to amend his claims against them would be futile. Plaintiff cannot cure his failure to exhaust administrative remedies against Defendant Lawrence. *See Alexander v. Brown*, No. 23-CV-06168, 2024 WL 4770755, at *4 (W.D.N.Y. Nov. 13, 2024) (dismissing a *pro se* plaintiff's claim with prejudice because could not "cure his failure to exhaust administrative remedies"). Nor can he cure his claims against Defendants Goord or Fischer because they are time-barred. *See*

*Bergrin v. United States*, No. 19-CV-09681, 2022 WL 912280, at *14 (S.D.N.Y. Mar. 28, 2022)

("Courts have denied leave to amend as futile where the claims are barred by applicable statute of

limitations.").

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and

DENIED in part. Defendants' motion to dismiss is GRANTED as to the first claim for relief; and

as to the second claim for relief as to Defendants Lawrence, Goord, and Fischer. The motion is

DENIED as to the second claim for relief as to Defendants Annucci, Fields, Burnett, and

Martuscello.

Defendants Annucci, Fields, Burnett, and Martuscello are directed to file an answer to the

Complaint within 14 days of the date of this Order. The Court will separately docket a Notice of

Initial Conference.

The Clerk of Court is respectfully requested to: (i) terminate Lawrence, Goord, and Fischer

as Defendants; (ii) terminate the pending motion (Doc. 45); and (iii) mail a copy of this Opinion

and Order to Plaintiff.

**SO ORDERED.**

Dated:  White Plains, New York
        June 9, 2025

PHILIP M. HALPERN
United States District Judge